Thomas Joseph McKEAN, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 1084S389.

Supreme Court of Indiana.

Dec. 9, 1986.

Frederic L. Romero, Romero & Thonert, Auburn, for appellant.

Linley E. Pearson, Atty. Gen., Kenneth P. Williams, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant, Thomas Joseph McKean was convicted by a DeKalb Superior Court jury of three (3) counts of dealing in a schedule II controlled substance, a class B felony. He was sentenced to a total of thirty (30) years for his convictions. His sentence was later modified to a term of twenty-two (22) years. On this direct appeal, Appellant asks us to review the following issues:

1) whether the trial court erred in denying Appellant's motion for a directed verdict;

2) whether the trial court erred in refusing to modify final instruction No. 24, and;

3) whether the trial court abused its discretion in denying Appellant's motion for a change of venue from the county.

On April 15, 1983, Frank Baade, Steuben County Coroner, was eating dinner at the Harbor Light Restaurant in Angola, Indiana. With him, among others, was Thomas Nedele, a Steuben County Deputy Sheriff. During the course of the evening, Appellant, with whom Baade was acquainted through business dealings, came by the table where the two men sat. Appellant said he was going to Fort Wayne to pick up a load of cocaine, and he offered to sell some to Baade, who declined. Thinking Appellant was joking, he suggested that Appellant talk to Nedele, who Baade knew had done undercover drug work.

Nedele did not know Appellant personally. Appellant said to him, "Yes, I've got some really good stuff," but did not specify what. Appellant said he could get "it" from Florida whenever he wanted, then left. Nedele called Officer Charles Hampshire of the Indiana State Police to report what happened, and decided to see if Appellant was serious. Appellant indicated that he was indeed serious, and offered to sell Nedele cocaine at $2200-2400 per ounce. Appellant gave Nedele his telephone number and told Nedele to contact him.

Nedele and Hampshire, in conjunction with Steuben County Reserve Sheriff Tina Sterrett, decided to continue the investigation of Appellant. On April 19, Nedele called Appellant, who agreed to meet Nedele and Sterrett (posing as Nedele's girlfriend) at the Lucky Steer restaurant parking lot in Auburn between 4:45 and 5:00 p.m. the next day. Nedele and Sterrett arrived at the Lucky Steer at the appointed time the next day, but Appellant did not show up. They called Appellant, who said he had sold his entire supply and was unable to contact Nedele. They agreed to meet Appellant at the same place at 6:00 on May 4, but again Appellant failed to appear. After several attempts to contact Appellant, Nedele and Sterrett finally met him at the McDonald's parking lot in Auburn on June 1, 1983. Appellant took out three packets of a white powder and sold them to Nedele and Sterrett for $300.00. Appellant also discussed mixing cocaine with other substances and how to do the "clorox test" to determine purity. On June 7, again at McDonald's in Auburn, Appellant met Nedele and Sterrett, and sold them seven packets of white powder for $600.00.

The parties arranged to meet again on June 23 at Dawn's Donuts in Auburn. Appellant agreed to sell an ounce of cocaine to

Nedele and Sterrett for $2200.00. After confirming the date, the police set up the arrest. The parties met at the agreed place and, after doing a purification test on the powder, Appellant was arrested.

At trial, Troy Ballard, a chemist for the Indiana State Police, testified that tests done on the substances obtained from the three transactions indicated they contained cocaine.

## I

■ Appellant first argues that the State failed to prove he delivered a schedule II controlled substance to undercover officers. ·He claims the State's proof shows that he delivered "cocaine (9042)", a cocaine salt, and not "cocaine (9041)", which is a base form. Thus, he alleges the trial court erred in denying his motion for a directed verdict.

We recently decided this exact issue against Appellant in *Sherelis v. State* (1986), Ind., 498 N.E.2d 973. We held that the general definition of "cocaine" as used in Ind.Code § 35–48–1–1 (Burns 1979) applies to "cocaine (9041)", listed as a Schedule II controlled substance under Ind.Code § 35–48–2–6 (Burns 1979). *Id.* at 976. Further, we held that Ind.Code § 35–48–2–2 (Burns 1979) limits the purpose of the DEA number placed in brackets after the word "cocaine" in Schedule II, and does not refer to a material element of the crime. *Id.* at 975. Having decided this issue against Appellant, there is no error here.

## II

■ Appellant's next contention is that the trial court, over his objection, refused to amend its final instruction 24 to include the number "9041" after the word "cocaine." The court included the number "9041" after the word cocaine in preliminary instruction 2, but refused to include the number in the final instruction. Thus, Appellant argues this confused the jury and constitutes reversible error. We disagree.

In determining whether an instruction was properly refused, this Court, on review, must consider whether the tendered instruction correctly stated the law, whether there was evidence in the record to support giving the instruction, and whether the substance of the tendered instruction was covered by other instructions given. *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, 1161, *cert. denied* 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851; *Hollon v. State* (1980), 272 Ind. 439, 441, 398 N.E.2d 1273, 1276. Here, final instruction 24 correctly stated the law. As we said in Issue I, the number "9041" is merely an identification number, and not a material element of the crime charged. Further, the court gave the jury an instruction containing the definition of cocaine as set out in Ind. Code § 35–48–1–1. Accordingly, we hold that the trial court correctly instructed the jury.

## III

Appellant's final argument is that the trial court erred in denying his motion for a change of venue from DeKalb County. In support of his motion, Appellant introduced ten news related exhibits, and called seven witnesses. The exhibits indicate that Appellant's arrest obtained a fair amount of publicity but there is no claim or showing that the articles contained other than the facts of the incident. One news article in particular included a picture of Appellant being handcuffed by police immediately after the drug sale which led to his arrest. The witnesses testified as to their opinion of whether Appellant could get a fair trial in DeKalb county. While many said they did not think Appellant could get a fair trial, others said they were not sure. The State called eleven witnesses in opposition to Appellant's change of venue. Many testified that they did not recall seeing or hearing any of the publicity concerning Appellant's arrest. Most opined that Appellant would get a fair trial in DeKalb County. After hearing all the evidence, the trial court denied Appellant's motion.

In order to obtain a change of venue from the county, the defendant must produce evidence of community bias or prejudice sufficient to convince the trial court that he could not obtain a fair trial in the county. *Dorton v. State* (1981), Ind., 419 N.E.2d 1289, 1294. In addition to demonstrating adverse publicity, the defendant must show that potential jurors are unable to set aside their preconceived notions of guilt and render a verdict based solely on the evidence. *Sage v. State* (1981), 275 Ind. 699, 419 N.E.2d 1286, 1287. Further, a change of venue from the county is within the sound discretion of the trial judge. *Ward v. State* (1982), Ind., 439 N.E.2d 156, 157, *reh. denied.*

Upon our review of the evidence presented at the hearing on Appellant's motion, even though his arrest was well-publicized in the area, we find there was not overwhelming evidence that potential jurors would have been prejudiced by such. Because Appellant failed to carry his burden of proof in this matter, the trial court was quite correct in denying his motion. *Robinson v. State* (1983), Ind., 446 N.E.2d 1287, 1289. Further, Appellant failed to include a record of *voir dire,* so it cannot be determined whether or not the jury actually picked was prejudiced by the publicity. *Ward,* 439 N.E.2d at 157.

Finding no error on any of Appellant's contentions, we affirm the trial court.

GIVAN, C.J., and DeBRULER, SHEPARD and DICKSON, JJ., concur.