Rodney S. JORDAN, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S02–8709–JV–799.

Supreme Court of Indiana.

Sept. 1, 1987.

**408**

Susan K. Carpenter, Public Defender, Vickie Yaser, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jody Cusson-Cobb, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

This cause comes to us on a Petition to Transfer from the First District Court of Appeals. In 1965, Rodney S. Jordan, then a juvenile, was adjudged to be a delinquent child, having committed an act which would be a crime if committed by an adult, to-wit: robbery, and was committed to the Indiana Boys School. He has long ago served the term of that commitment. In 1985, Jordan filed a Petition for Post-Conviction Relief with the Marion County Juvenile Division. The trial court, without referring his petition to the Indiana Public Defender and without holding any hearing, summarily denied his petition because "post-conviction relief is not a procedure used in the juvenile court process." The trial court also denied Jordan's motion to refer his petition to the Public Defender on the ground it was not timely filed. The Court of Appeals found Ind.R.P.C. 1 was available to a juvenile adjudged to be delinquent for having

committed an act which would constitute a crime if committed by an adult. The State seeks transfer, arguing that 1) juvenile adjudications are not convictions and therefore the post-conviction remedies are not intended for their review and 2) due process does not require application of the post-conviction remedies to delinquency adjudications because the juvenile code affords adequate protections and remedies. We agree with the State's analysis of the law and accordingly vacate the opinion of the Court of Appeals and affirm the trial court's denial of Jordan's petition.

P.C. 1 provides a post-conviction remedy for "any person who has been convicted of, or sentenced for, a crime by a court of this State...." This rule, by its very language, concerns only persons convicted of or sentenced for a crime. It cannot be interpreted to refer in any manner to a juvenile because a juvenile case is a civil and not a criminal matter. Juvenile adjudications do not constitute criminal convictions. *Pallett v. State* (1978), 269 Ind. 396, 401, 381 N.E.2d 452, 456.

The nature of the juvenile process is rehabilitation and aid to the juvenile to direct his behavior so that he will not later become a criminal. For this reason the statutory scheme of dealing with minors is vastly different than that directed to an adult who commits a crime. Juvenile judges have a variety of placement choices for juveniles who have delinquency problems, ranging from a private home in the community, a licensed foster home, a local juvenile detention center, to State institutions such as the Indiana Boys School and Indiana Girls School. None of these commitments are considered sentences. A child can become a juvenile delinquent by committing acts that would not be a violation of the law if committed by an adult, such as incorrigibility, refusal to attend public school, and running away from home. A child can also become a delinquent by committing acts that would be a crime if committed by an adult. In the juvenile area, no distinction is made between these two categories. When a juve-

nile is found to be delinquent, a program is attempted to deter him from going further in that direction in the hope that he can straighten out his life before the stigma of criminal conviction and the resultant detriment to society is realized. In contrast, when an adult is convicted of a crime, the conviction is a stigma that follows him through life, creating many roadblocks to rehabilitation. In addition to the general stigma of being an "ex-con", or a felon, the conviction subjects him to being found a habitual criminal if he later commits additional felonies, and affects his credibility as a witness in future trials. The Legislature purposely designed the procedures of juvenile determinations so that these problems are not visited on those found to be juvenile delinquents in a juvenile court.

 Indiana Code, Title 31 § 6 sets out the procedures to be used by juvenile courts in a determination of delinquency. The Legislature has provided:

**Criminal charge against child in juvenile prohibited—Exception—Effect of juvenile court adjudication.**—(a) A child may not be charged with or convicted of a crime, except a crime excluded by IC 31-6-2-1(b), unless he has been waived to a court having criminal jurisdiction.

(b) A child may not be considered a criminal by reason of an adjudication in a juvenile court nor may such an adjudication be considered a conviction of a crime. Such an adjudication does not impose any civil disability imposed by conviction of a crime.

(c) A child's contact with the juvenile justice system does not disqualify him from any governmental application, examination, or appointment. [IC 31-6-3-5, as added by Acts 1978, P.L. 136, § 1; 1979, P.L. 276, § 11.]

Ind.Code Ann. § 31-6-3-5 (Burns 1980). Any findings or adjudications of the juvenile court are subject to review by the Court of Appeals or this Court pursuant to our appeal process. An adjudication of delinquency cannot be used to attack the credibility of a defendant. *Lineback v. State* (1973), 260 Ind. 503, 512, 301 N.E.2d 636, 637, *cert. denied* (1974) 415 U.S. 929, 94 S.Ct. 1440, 39 L.Ed.2d 487. The disposition of a juvenile matter is not admissible as impeachment evidence since the disposition of a juvenile does not constitute a criminal conviction. *Pallett*, 269 Ind. at 401, 381 N.E.2d at 456. Finally, the Legislature has provided for the further protection of juveniles by authorizing the juvenile courts to completely expunge and destroy, or return to the individual, his entire juvenile record.

**Expungement—Effect on civil actions.**

(a) This section applies only to records created as a result of allegations that a child is a delinquent child or a child in need of services.

(b) Any person may petition a juvenile court at any time to remove from its files, from the files of law enforcement agencies, and from the files of any other person who has provided services to a child under a court order those records pertaining to his involvement in juvenile court proceedings.

(c) In considering whether to grant the petition, the juvenile court may review the following:

(1) The best interests of the child.

(2) The age of the person during his contact with the juvenile court or law enforcement agency.

(3) The nature of any allegations.

(4) Whether there was an informal adjustment or an adjudication.

(5) The disposition of the case.

(6) The manner in which the person participated in any court ordered or supervised services.

(7) The time during which the person has been without contact with the juvenile court or with any law enforcement agency.

(8) Whether the person acquired a criminal record.

(9) The person's current status.

(d) If the court grants the expungement petition, it shall order each law enforcement agency and each person who provided treatment for the child under an order of the court to send that person's records to the court.

(e) The records may be destroyed or given to the person to whom they pertain.

(f) If a person whose records are expunged brings an action that might be defended with the contents of such records, the defendant is presumed to have a complete defense to such an action. In order for the plaintiff to recover, he must show that the contents of the expunged records would not exonerate the defendant. The plaintiff may be required to state under oath whether he had records in the juvenile justice system and whether those records were expunged. If the plaintiff denies the existence of the records, the defendant may prove their existence in any manner compatible with the law of evidence. [IC 31–6–8–2, as added by Acts 1978, P.L. 136, § 1; 1979, P.L. 276, § 51.]

Ind.Code Ann. § 31–6–8–2 (Burns 1980). This is a right and remedy far above any of those accorded adults convicted of crimes. It disproves the contention that failure to apply the post-conviction rules to juveniles would somehow give them fewer rights and remedies than those accorded to adults.

An examination of the statutes concerning criminal convictions and juvenile determinations shows that P.C. 1 was meant to apply to criminal convictions and cannot be applied to one adjudicated a delinquent. To do so would be to judicially amend P.C. 1. This Court will not amend rules through dispositional opinions. If we so amended rules, it would be necessary for those attempting to interpret the rules to research our opinions to determine what the rules provide. It is preferable to make any amendments directly to the rules.

Furthermore, failure to apply P.C. 1 to juveniles does no violence to their rights and remedies. The Legislature has clearly and exhaustively provided higher standards for the treatment of juveniles than those accorded convicted criminals, particularly the right to have the records totally expunged. In addition, the defendant has shown no prejudice by the Court's refusal to apply P.C. 1 to him, nor benefit should the Court do so.

The statement, made by the Court of Appeals, that: "...a record of adjudication of juvenile delinquency may be considered as an aggravating circumstance to support enhancement of a criminal sentence," is incorrect. An adjudication of delinquency is not a fact that can be used by a sentencing court to enhance a criminal sentence. Rather, the sentencing court may consider prior criminal conduct or history of criminal activity as an aggravating factor. A juvenile history detailed in a pre-sentence report filed with the trial court may suffice as evidence of a criminal history, and thus constitute an aggravating circumstance. *Sims v. State* (1981), Ind. App., 421 N.E.2d 698, 703. This Court has found the sentencing judge acted properly when he referred to a juvenile record which established that a defendant had a history of criminal conduct and there was a risk that this pattern could continue. *Evans v. State* (1986), Ind., 497 N.E.2d 919, 923. No mention is made of adjudication of delinquency. The aggravating factor being considered is a pattern of criminal activity or conduct from which the sentencing judge may evaluate whether this person might continue the pattern and commit crimes in the future. In making such a determination the sentencing court is permitted to consider evidence of prior criminal conduct by an adult not reduced to a conviction and pending charges. *Smith v. State* (1986), Ind., 490 N.E.2d 748, 753; *Stark v. State* (1986), Ind., 489 N.E.2d 43, 48; *Ashby v. State* (1985), Ind., 486 N.E.2d 469, 477; *Lindsey v. State* (1985), Ind., 485 N.E.2d 71, 73. Further, for the purpose of determining a sentence, the trial court's discretion in considering a history of criminal activity is not limited. *Hutchinson v. State* (1985), Ind., 477 N.E.2d 850, 856. It is therefore not a particular adjudication of delinquency that subjects a defendant to an aggravated sentence, but rather, is any conduct tending to show a criminal pattern.

The trial court is affirmed.

SHEPARD, C.J., and GIVAN, J., concur.

DeBRULER, J., dissents with opinion in which DICKSON, J., concurs.

DeBRULER, Justice, dissenting.

I find that I am in accord with the opinion of the First District in this case penned by Judge Ratliff, appearing as *Jordan v. State* (1986), Ind.App., 499 N.E.2d 759, in which that court concluded that the post-conviction rules should be declared available as a procedure to challenge a juvenile's adjudication of delinquency when that adjudication was based upon conduct which would amount to a crime if committed by an adult. There are many ways in which the rights of juveniles, to counsel and to the reasonable doubt standard for example, parallel those rights of criminal defendants. It is plain to me that a juvenile, falling into the category identified by the First District, must as a matter of due process have some procedure available through which to challenge an adjudication after appeal time has expired, after he has turned eighteen and may yet face injurious consequences as a result of the adjudication, and most importantly *on legal grounds.* The statutory process of expungement does not fill the requirement, because it is based, not upon a claim of illegal adjudication, but upon successful completion of the sanctions imposed by reason of the adjudication.

In order therefore, not to create a new procedure to implement the due process right of the juvenile to seek post-adjudication redress, after the time for appeal has expired, I would bring cases such as this under the umbrella of the present post-conviction remedy rules. My judgment is that the number of those who would seek use of the rules for this purpose would be small, and thus the cost of applicability would be modest. On the other hand, by declaring the rule available, we would be extending a benefit which can have real consequences in individual cases, and which would narrow the inevitable gap between that which the constitutions and laws promise, and that which our human judicial institutions deliver.

DICKSON, J., concurs.